IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHIHEAN JONES,<br>　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, *et al.*<br>　　Defendants. | :<br>:<br>:<br>: 　CIVIL ACTION NO. 25-CV-1650<br>:<br>:<br>: |

<u>MEMORANDUM</u>

**SÁNCHEZ, J.**                                                                                                    **JUNE 12, 2025**

Plaintiff Chihean Jones, an inmate currently incarcerated at the Federal Detention Center in Philadelphia, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971),[1] alleging various constitutional claims and a statutory claim arising from his ongoing criminal prosecution for federal crimes. (*See* ECF No. 1 ("Compl.")). Jones also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Jones's Motion to Proceed *In Forma Pauperis* and dismiss his Complaint with prejudice.

**I.      FACTUAL ALLEGATIONS**[2]

---

[1] "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

[2] The factual allegations set forth in this Memorandum are taken from the Complaint (ECF No. 1). The Court adopts the sequential pagination supplied by the CM/ECF docketing system to the entire submission. Punctuation, spelling, and capitalization errors in the Complaint will be cleaned up where appropriate. The Court may consider matters of public record when conducting a screening under § 1915. *See Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006).

Jones alleges that his civil rights were violated in several ways by his ongoing criminal prosecution for federal crimes.[3] First, he asserts that the Defendants "conspired against [him] in order to bring about charges they knew or likely knew to be false. They were able to do this by utilizing the secrecy of the grand jury process, claiming the charges fell under the process by default." (Compl. at 1.) Next, he alleges that Defendants violated his Sixth Amendment rights and the Jury Selection and Service Act of 1968 (28 U.S.C. § 1861, *et seq*.) in various ways, including by "cover[ing] up the . . . systematic exclusion of the disproportionate number of students, blacks, and people with Spanish and Chinos [sic] surnames from the master list from which [Jones's] grand jury would be selected"; summoning a grand jury with fewer than 16 members; failing to bring Jones out of custody for selection of the grand jury; not permitting Jones to inspect and copy the master jury list; and "attempting to persuade and manipulate the judge into disregarding a pro se filing under the pretenses of plagiarism."[4] (*Id*. at 1-2.)

He also asserts that "[t]he indictment itself is invalid due to the fact that it does not have the proper signatures, nor is the signature that was signed by the person acting as the U.S. Attorney even legible." (*Id*. at 2.) Jones "believes that there was no grand jury because the 'true bill' wasn't signed by the clerk on the return of the indictment, in accordance with the rule governing grand jury proceedings." (*Id*.) Jones seeks $12 million in punitive damages and a trial by jury. (*Id*. at 1.)

## II.   STANDARD OF REVIEW

---

[3] Jones was charged in a second superseding indictment with: (1) robbery which interferes with interstate commerce; (2) use of a firearm in furtherance of a crime of violence; and (3) murder in the course of using and carrying a firearm. *See USA v. Brown, et al*., No. 23-215 (E.D. Pa.) (ECF No. 94).

[4] Jones does not provide any further context for this cryptic allegation.

The Court grants Jones leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Jones is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

**III.    DISCUSSION**

    **A.    Claims Against the United States and its Agencies**

The Court understands Jones to raise constitutional claims arising from his criminal prosecution, primarily based on alleged irregularities in the grand jury and indictment process. (*See generally* Compl.) As an initial matter, Jones's claims against Defendant United States of America fail because suits against the federal government are "barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields

3

the Federal Government and its agencies from suit."). Since Congress has not waived sovereign immunity for the asserted claims against the United States, Jones's claims against the United States are barred by sovereign immunity.

Jones's claims against the United States Department of Justice are likewise barred because federal agencies are not subject to suit under *Bivens*. *See Meyer*, 510 U.S. at 486-87 (refusing to extend *Bivens* claim to federal agency defendant); *see also Keys v. U.S. Dep't of Just.,* 285 F. App'x 841, 842 (3d Cir. 2008) (affirming dismissal of claims against DOJ under *Meyer*); *Hindes v. F.D.I.C.*, 137 F.3d 148, 158-59 (3d Cir. 1998) (federal governmental entities are not "persons" subject to suit in a federal civil rights matter). Accordingly, Jones's claims against the United States and DOJ are dismissed with prejudice.

**B.    Claims Against Federal Prosecutor(s)**

Jones also states he is "suing the Government's Attorney" which the Court understands to be a reference to the Assistant United States Attorney(s) prosecuting his criminal case. (Compl. at 1.) Prosecutors are entitled to absolute immunity from liability for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).[5] Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence, *Fogle v. Sokol*,

---

[5] Although *Imbler* was a suit against a state prosecutor filed pursuant to 42 U.S.C. § 1983, the United States Court of Appeals for the Third Circuit has held that public policy mandates a similar immunity be extended to federal prosecutors in *Bivens* actions. *Brawer v. Horowitz*, 535 F.2d 830, 834 (3d Cir. 1976).

4

957 F.3d 148, 160 (3d Cir. 2020).  Absolute immunity can extend to "the duties of the prosecutor . . . involv[ing] actions preliminary to the initiation of a prosecution and actions apart from the courtroom."  *Mancini v. Lester*, 630 F.2d 990, 994 n.6 (3d Cir. 1980) (quoting *Imbler*, 424 U.S. at 431 n.33).  This means prosecutors have absolute immunity from suits challenging their preliminary "strategic decisions," including their decision to prosecute a case.  *Harris v. Krasner*, No. 23-2068, 2024 WL 2861848, at *2 (3d Cir. June 6, 2024), publication ordered, No. 23-2068, 2024 WL 3493020 (3d Cir. July 22, 2024).  To the extent discernible, Jones's claims against the unnamed prosecutor(s) in his case arise from the handling of grand jury proceedings including failing to bring Jones out of custody to participate, the decision to charge him with federal crimes, and allegedly "manipulat[ing]" the presiding judge to rule against Jones on an unspecified motion.  (Compl. at 1-2.)  These are all acts that are "intimately associated with the judicial phase of the criminal process" to which prosecutorial immunity applies.  *See Imbler*, 424 U.S. at 430-31.  Accordingly, Jones's claims against the unnamed "Government Attorney" are barred by prosecutorial immunity.

        C.      **Claims Against Unnamed Federal Agents**

Jones lists as Defendants in the caption of his Complaint "Unknown Named defendants" and brings his "lawsuit against 12 unnamed federal agents."  (Compl. at 1.)  While naming Doe defendants at the pleading stage is permissible, *see Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009) ("Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified."), Jones does not describe these individuals in any meaningful way in the body of his Complaint, nor assert any allegations as to how each of these unidentified individuals were involved in the violation of his civil rights.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting Rode, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Because Jones does not allege any facts to support his claims against the 12 unnamed federal agents those claims are not plausible and will be dismissed.[6] *See Concepcion v. Russell*, No. 21-0274, 2021 WL 826301, at *2 (E.D. Pa. Mar. 4, 2021) (dismissing claims against Doe defendants where the "allegations against these additional John or Jane Doe Defendants are vague and generalized, and thus insufficiently specific to state a claim against them.").

**D.     Jury Selection and Service Act Claims**

---

[6] At most, Jones refers to "Defendants" as a group, failing to distinguish between the 12 Doe defendants, identify which individuals or entities were involved in each violation of his rights, or specify what each of them did and when. (*See e.g.*, Compl. at 1-2.) As noted above, the Complaint must contain sufficient facts for the Court to "draw the reasonable inference that [every named] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"). Further, if these Defendants are prosecutors participating in the prosecution of the federal charges against Jones, they will be subject to immunity as noted above.

Jones asserts that unspecified Defendants violated the Jury Selection and Service Act ("JSSA" or "the Act") by, *inter alia*, excluding minorities and students from the grand jury master list, summoning a grand jury with fewer than 16 members, failing to bring Jones out of custody for selection of the grand jury, and preventing Jones from reviewing the grand jury master list. (Compl. at 1-2.) The JSSA "governs the selection of grand and petit juries in federal court, and 'seeks to ensure that potential grand and petit jurors are selected at random from a representative cross section of the community and that all qualified citizens have the opportunity to be considered for service.'" *United States v. Calabrese*, 942 F.2d 218, 220 (3d Cir. 1991), (quoting *United States v. Bearden*, 659 F.2d 590, 593 (5th Cir. 1981) (citing 28 U.S.C. § 1861), cert. denied, 456 U.S. 936 (1982)). The JSSA prohibits discrimination "on account of race, color, religion, sex, national, origin, or economic status." 28 U.S.C. § 1862. To achieve these goals, the JSSA provides that each United States District Court shall create a jury selection plan that complies with the Act's requirements. *Calabrese*, 942 F.2d at 220. "Challenges to compliance with the Act's selection procedures must be raised before voir dire begins, or within seven days after the party raising the challenge discovers, or could have discovered, the grounds for the challenge." *Id*. at 221 (citing 28 U.S.C. § 1867). Notably, nothing in the Act suggests that it provides a separate basis for a cause of action for damages.

On February 7, 2025 Jones filed a motion in his criminal raising the same grounds asserted in his Complaint, challenging the grand jury process under the JSSA. (*See United States v. Jones*, 23-215-03 (ECF No. 266)). On May 5, 2025, the judge in Jones's criminal case denied the motion, thoroughly rejecting his arguments in a lengthy footnote, as follows:

> Defendant moves to quash the indictment for several reasons. First, he believes he had a right to be present at the selection of the grand jury. (*See* ECF No. 266.) Second, he believes he has a right to challenge the grand jury and believes he was not given the opportunity to do so. (*Id*.) Third, Defendant believes that the

indictment does not contain proper signatures. (*Id*.) Fourth, Defendant believes that the grand jury was not selected in accordance with the proper policies and procedures. (*Id*.) . . . Addressing the Defendant's first point, "[w]hile the grand jury is in session, Federal Rule of Criminal Procedure 6 provides that the only people who may be present are 'attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device.'" *United States v. Bailey*, 2024 WL 4656206, at *6 (E.D. Pa. Oct. 31, 2024) (citing Fed. R. Crim. P. 6). Notably, this list does not include the defendant. *Id*. Furthermore, Defendant's reliance on *Test* is misplaced as it does not make any mention of a defendant's presence at grand jury proceedings. *Test v. United States*, 420 U.S. 28 (1975). In conclusion, the Defendant did not have a right to be present during the Grand Jury proceedings and any Motion based upon that alleged right is denied. In addressing Defendant's second point, it is true that a defendant "may challenge the grand jury on the ground that it was not lawfully drawn, summoned, or selected." Fed. R. Crim. P. 6(b)(1). The Defendant bears the burden of demonstrating that an abuse has occurred, as a "presumption of regularity attaches to a grand jury's proceedings. . . ." *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976), cert. denied, 430 U.S. 969 (1977); *See also United States v. Kelley*, 2013 WL 12436245, at * 2 (W.D. Pa. May 14, 2013) ("With respect to the grand jury, 'the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority.'") (citing *United States v. R. Enterprises, Inc*., 498 U.S. 292, 300-01 (1991)). To challenge the composition of a grand jury, a party must provide a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of the Jury Selection and Service Act ("JSSA"). 28 U.S.C. § 1867(d). Failing to provide such an affidavit or sworn testimony is fatal to a defendant's challenge. *See e.g. United States v. Jones*, 480 F.2d 1135, 1139 (2d. Cir. 1973). Defendant has not provided any sworn testimony or statement of facts which would meet defendant's burden of showing that an abuse has occurred. This is also fatal to Defendant's Fourth point, that the grand jury was not selected in accordance with the proper policies and procedures. Defendant has not provided any evidence or sworn testimony that the policies and procedures of the selection of the Grand Jury were not followed. Furthermore, the Court finds no evidence on the record that Defendant has been prevented from challenging the grand jury proceedings. The Court has allowed the Defendant to challenge the grand jury proceedings, which he has done. The Court, through this Order, on the record, and in previous orders has evaluated these challenges. To the extent that Defendant believes his right to challenge the grand jury proceedings has been abridged due to him not being present, there is no legal grounds for such a challenge. Defendant also claims that the proper signatures were not affixed to the Second Superseding Indictment (ECF No. 94). "[I]ndictments are to be signed by both the foreperson of the grand jury and by an attorney for the government." *United States v. Willaman*, 437 F.3d 354, 360 (3d Cir. 2006) (citing Fed. R. Crim. P. 6(c), 7(c)(1)). The Court, reviewing the Second Superseding Indictment, finds that the signature of the foreman and the U.S. Attorney and/or her delegate is properly present, satisfying the Rules of Criminal

> Procedure. Furthermore, while there is no signature above the line titled "Clerk", the Court finds that the lack of this signature, to the extent a signature is even required, is a mere technical irregularity that is not necessarily fatal to the indictment, similar to if a foreman didn't sign an indictment. *Hobby v. United States*, 468 U.S. 339, 345 (1984). . . . For the reasons stated above, Defendant's Motions to Quash (ECF Nos. 266, 279) are denied.

*Id*. (ECF No. 319 at 1-2, n. 1). For the same reasons articulated by Judge Hodge in Jones's criminal case, Jones fails to state a claim under the JSSA here, assuming he could bring any such claim in the first place. Accordingly, his claims asserting failure to comply with the jury selection provisions of the JSSA fail.

      E.      **No *Bivens* Remedy is Available for Jones's Constitutional Claims**

Even assuming Jones had named an eligible Defendant, his case must be dismissed because, for reasons discussed below, his constitutional claims are not cognizable under *Bivens*. *Bivens* provides a judicially recognized damages remedy for constitutional violations committed by federal actors in highly limited circumstances. *Egbert v. Boule*, 596 U.S. 482, 486 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017). Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok*, 868 F.3d at 200; *see Egbert*, 596 U.S. at 501. The Supreme Court has recognized an implied private action against federal officials in only three cases: (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment. *See Dongarra v.*

9

*Smith*, 27 F.4th 174, 180 (3d Cir. 2022); *see also Abbasi*, 582 U.S. at 131 ("These three cases - *Bivens*, *Davis*, and *Carlson* - represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."). "To preserve the separation of powers, the Court has 'consistently rebuffed' efforts to extend *Bivens* further . . . [because] [t]he Constitution entrusts Congress, not the courts, with the power to create new federal causes of action and remedies." *Dongarra*, 27 F.4th at 180 (citing *Hernandez v. Mesa*, 589 U.S. 93, 101 (2020)); *see also Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) ("In the fifty-two years since *Bivens* was decided, . . . the Supreme Court has pulled back the reins to what appears to be a full stop and no farther.").

"Reflecting these concerns, the Supreme Court has set forth a two-step inquiry to determine the availability of *Bivens* remedies in a particular case." *Kalu v. Spaulding*, 113 F.4th 311, 326 (3d Cir. 2024). "First, [courts] ask whether the 'case presents a new *Bivens* context'—*i.e.*, whether the 'case is different in a meaningful way from previous *Bivens* cases decided by' the Supreme Court"—using only *Bivens*, *Davis*, and *Carlson* as a benchmark as well as a "broad" understanding of what constitutes a new context. *Id.* (quoting *Abbasi*, 582 U.S. at 139). The non-exclusive list of factors to consider here includes:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* (quoting *Abbasi*, 582 U.S. at 139-40). "Whether a context is new is an 'easily satisfied' test because 'a modest extension of the *Bivens* action is still an extension[,]'" meaning "[e]ven 'significant parallels to one of the Supreme Court's previous *Bivens* cases' may not be enough." *Henry v. Essex Cnty.*, 113 F.4th 355, 361 (3d Cir. 2024) (cleaned up) (quoting *Abbasi*, 582 U.S.

10

at 147-49); *Fisher*, 115 F.4th at 206 ("[A] case can differ meaningfully from *Bivens, Davis*, and *Carlson* even when it involves the same constitutional right as one of those cases.").

If the context is new, courts proceed to the second step of the inquiry, which "ask[s] whether there are 'special factors counselling hesitation' in extending *Bivens*" with a focus "'on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Kalu*, 113 F.4th at 326 (quoting *Abbasi*, 582 U.S. at 136); *see also Fisher*, 115 F.4th at 205 ("*Egbert* now requires us to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages action." (quoting *Egbert*, 596 U.S. at 492)). Special attention is given to the existence of an alternative remedial structure and separation-of-powers concerns. *Kalu*, 113 F.4th at 326. If there is any reason to think Congress might be better situated to weigh the costs and benefits of a damages action, courts may not do so. *Id.* at *5. That uncertainty alone forecloses *Bivens* relief. *Id.* at *4. "To sum up, . . . : unless a case is indistinguishable from *Bivens, Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts." *Id.* at *5.

1. **Sixth Amendment right to fair trial**

The Court understands Jones to allege a Sixth Amendment right to fair trial claim based on the same grounds asserted under the JSSA, i.e. various alleged irregularities in the grand jury and indictment process. (Compl. at 1-2.) However, a Sixth Amendment right to fair trial claim "is not a plausible extension of *Bivens* liability." *Gedeon v. Att'y Gen.*, No. 22-3595, 2022 WL 7570749, at *7 (E.D. Pa. Oct. 12, 2022). The United States Court of Appeals for the Third Circuit has held that a Sixth Amendment claim for denial of the right to a fair trial does not fall within any of the existing contexts for which the Supreme Court has implied a Bivens remedy.

11

*See Sharratt v. Murtha*, 437 F. App'x 167, 170 (3d Cir. 2011) ("We doubt that a purported violation of Sixth Amendment rights could be remedied under Bivens."). Other appellate courts have likewise held that this is not a proper extension of *Bivens*. *See, e.g.*, *Montgomery v. Ferentino*, No. 20-3114, 2021 WL 3204843, at *2 (6th Cir. Feb. 24, 2021) ("Montgomery has not provided this court with any authority supporting an extension of the Bivens remedy here, and other courts have expressed doubt over whether an alleged violation of the Sixth Amendment is cognizable under Bivens."). For the reasons set forth above, Jones's Sixth Amendment claim is not cognizable under *Bivens* and will be dismissed with prejudice.

### 2. Fifth Amendment Due Process Claims

The Court understands Jones to also assert claims under the Due Process Clause of the Fifth Amendment regarding the grand jury process.[7] In determining whether a *Bivens* remedy is available for Jones's claims, the Court looks first to whether the Supreme Court has previously recognized such a cause of action under *Bivens*. While the Supreme Court recognized a *Bivens* cause of action under the Fifth Amendment due process clause in *Davis*, the Court finds few parallels between that case and Jones's claims in the instant suit.

---

[7] While Jones references the First, Fourth, Fifth, Sixth, and Eighth Amendments, (see Compl. at 1), a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). Here, Jones does not assert facts that plausibly allege claims under anything but the Fifth and Sixth Amendments. In any event, it is worth noting that courts have been reluctant to imply a *Bivens* remedy for Fourth Amendment (and other) challenges to a federal prosecution. *Xi*, 68 F.4th at 834 (rejecting the existence of a *Bivens* remedy where "evaluating Xi's claims would invite a wide-ranging inquiry into the agent's state of mind and the evidence available to investigators, prosecutors, and the grand jury" (internal quotations omitted)); *see also Annappareddy v. Pascale*, 996 F.3d 120, 137 (4th Cir. 2021) ("Also counseling hesitation is the risk that a *Bivens* action for these Fourth Amendment claims would require courts to interfere in the executive branch's investigative and prosecutorial functions.").

In *Davis*, a former congressional staffer sued her former employer, Louisiana Congressman Otto E. Passman, for gender discrimination under the Fifth Amendment. After firing her as his deputy administrative assistant, Passman stated that, "although [Davis] was 'able, energetic and a very hard worker,' he had concluded 'that it was essential that the understudy to my Administrative Assistant be a man.'" *Davis*, 442 U.S. at 230. Noting its "numerous decisions" holding that "the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws" the Supreme Court held that Davis's Fifth Amendment gender discrimination claim was cognizable under *Bivens*. *Id*. at 248-49.

Other than asserting a claim under the Fifth Amendment Due Process Clause, Jones's suit bears little similarity to *Davis.* Perhaps the prominent distinction is that Jones's claim arises in the context of a criminal prosecution, rather than the employment discrimination context of *Davis*. It involves both a new category of litigant, i.e. a federal inmate, and new category of defendants, i.e. federal prosecutors. Indeed, one prominent policy concern presented by Jones's claims—the risk of judicial interference with the law enforcement functions of the executive branch—were not remotely considered by the Supreme Court in *Davis*. *See generally Davis*, 442 U.S. 228. This alone is sufficient to establish that Jones's due process claims represent a "new context" under *Bivens*, requiring a special factors analysis.

Turning to that analysis, the Court finds that multiple factors counsel against recognizing a new Fifth Amendment cause of action under *Bivens*. Doing so would potentially subject federal prosecutors to a flood of Fifth Amendment damages claims from criminal defendants, forcing them to engage in collateral—potentially duplicative—litigation while attempting to enforce the nation's criminal laws. It would also burden the federal courts with potentially a parallel civil case for every criminal prosecution, a prospect that could overwhelm the judicial

13

branch.  Moreover, Jones already has a venue in which to raise concerns about jury selection, the grand jury process, and misconduct by prosecutors: his pending criminal case.  He can, and has filed motions challenging various aspects of the criminal process (indeed the very same alleged violations asserted here), and file an appeal if he believes the district court has erred.[8]  Given the important separation of powers concerns and potential burden on federal resources at stake, it would be unwise for this Court to recognize a cause of action where Congress has declined to do so.  Accordingly, the Court finds that Jones cannot assert a Fifth Amendment due process claim under *Bivens* and will dismiss these claims with prejudice.

### IV.   CONCLUSION

For the reasons stated, the Court will dismiss Jones's Complaint for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii).  The Court concludes that amendment would be futile because Jones cannot cure the noted deficiencies in his Complaint.[9]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should generally be granted "unless amendment would be inequitable or futile.")  An appropriate Order follows, dismissing the case.  *See* Fed. R. Civ. P. 58(a).

---

[8] While Jones may not, as he does in this civil suit, seek damages in the context of his criminal case, he may nevertheless obtain other forms of relief. *Xi*, 68 F.4th at 837 (explaining that "*Egbert* instructs that an alternative remedy need not provide complete relief or be as effective as an individual damages remedy to foreclose *Bivens* relief" (internal quotations omitted)).

[9] In arriving at this conclusion, the Court has also considered the assorted "amendments" and "attachments" filed by Jones in the course of this case and has concluded that none of them suggest any plausible basis for a proper legal claim.  (*See* ECF Nos. 4, 7, 8.)

**BY THE COURT:**

<u>     /s/ Juan R. Sánchez     </u>
**JUAN R. SÁNCHEZ, J.**